## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ALEX MCNAMARA, individually**
**and on behalf of all others**
**similarly situated,**

      **Plaintiff,**

**v.**                                    **CASE NO:  8:21-cv-0618-MSS-JSS**

**BRENNTAG MID-SOUTH, INC.,**

      **Defendant.**

_____/

### UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS
### SETTLEMENT AND SUPPORTING MEMORANDUM OF LAW

The Class Representative, Alex McNamara ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, files this Unopposed Motion for Final Approval of the Parties' Class Action Settlement.[1]  On November 2, 2021, this Court issued an Order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 24)  In that Order, the Court found that Settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 2, ¶ 2). Following entry of that Order, the Settlement Class Administrator sent a Notice of Settlement via

---

[1] All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement"), filed on February 18, 2021.  (*See* Doc. 22-2).

1

first class mail to all Settlement Class Members and, thus far, <u>zero</u> have objected to the Settlement.  Not only that, <u>zero</u> requests for exclusion were made. Considering the size of the Class, coupled with the fact this is a "claims paid" settlement (meaning all class members will automatically receive a check without having to file claims), and no funds revert to Defendant (instead they will be paid to *cy pres* recipient),[2] the Settlement is an excellent outcome.

In sum, little has changed since the Court's Order granting the Plaintiff's Motion for preliminary approval, confirming that the Settlement is fair, reasonable, adequate, and warrants final approval. As a result, Plaintiff requests that the Court enter the Final Approval Order attached as Exhibit A. In further support thereof, Plaintiff states as follows:

## I.    <u>BACKGROUND.</u>

Plaintiff filed a Class Action Complaint against Defendant in which she asserted claims for herself and a putative class under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and the putative class against Defendant.

---

[2] The proposed *cy pres* recipient is Bay Area Legal Services, a non-profit law firm.

The terms of the Settlement Agreement were carefully modeled after similar COBRA class action settlements approved in the Middle District of Florida, including by Judge Scriven in *Rigney, et al. v. Target Corp.*, M.D. Case No. 8:19-cv-01432-MSS-JSS (March 14, 2021, Docs. 58-59), and *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127); Judge Merryday in *Valdivieso v. Cushman & Wakefield, Inc.*, M.D. Fla. Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92); Judge Moody in *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34); and Judge Jung in *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No. 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63).

If approved here, the settlement provides for immediate relief to approximately 906 members of the proposed settlement class ("Settlement Class Members" or "Class Members"). Defendant has agreed to create a common fund of $65,000 for the Class Members. Settlement Class Members will not be required to take any action to receive a check, making it a "claims paid" settlement. The gross payment is approximately $71.74 per Settlement Class Member, with a net amount of approximately $53.00 per Settlement Class Member, amounts which are consistent with other COBRA class action settlements approved by this Court. There is no reverter of settlement funds to Defendant. Subject to Court approval, the cost of administration will also be

paid from the fund along with a general release payment to Alex McNamara. If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, Bay Area Legal Services. Defendant has also agreed to pay class counsel $70,000 in attorneys' fees and costs, which will be paid directly by Defendant to Plaintiff's Counsel (subject to approval by this Court) and not deducted from the settlement fund. In sum, the proposed settlement is fair and reasonable, and preliminary approval by the Court should be granted.

A.    <u>**The Claims and Case Background**</u>.

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) and 29 U.S.C. § 1166(a). The lawsuit generally alleges Defendant provided Plaintiff and other Class Members with a deficient COBRA election notice ("COBRA Notice" or "Notice"). More specifically, Plaintiff asserted that Defendant's COBRA Notice did not adequately inform her how to exercise her rights to elect COBRA coverage. Plaintiff has further alleged that, in violation of 29 C.F.R. § 2590.606–4(b)(4), the Notice failed to: (i) include a date certain on which continuation coverage ends; (ii) identify the Plan Administrator; and, finally, (iii) be written in a manner calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Plaintiff sought statutory penalties,

injunctive relief, attorneys' fees and costs on behalf of herself and all others similarly situated. Throughout the litigation, Defendant has denied that any purported violation occurred and has asserted that its COBRA Notices have complied with any and all applicable laws.

The original complaint was filed on March 17, 2021. (Doc. 1). In order to conserve resources, and because both sides are extremely well-versed in the claims at issue in this litigation,[3] the parties initially agreed an early class-wide mediation. Thus, on June 24, 2021, the Parties filed a Joint Motion to Stay the case pending mediation to be conducted before class-action mediator Carlos Burruezo. (*See* Doc. 14). The Court granted the Motion, and the case was stayed. (*See* Doc. 15).

On August 16, 2021, the Parties participated in an all-day mediation session with Mr. Burruezo. Both sides were well-represented. Defendant was represented by two defense lawyers from Morgan, Lewis & Bockius LLP, Jeremy Blumenfeld and Christopher Diffee, along with its own in-house counsel. Plaintiff was represented by the undersigned lawyers, Brandon Hill and Luis

---

[3] The COBRA form Defendant used is referred to as the "WageWorks" COBRA form because the template for the form came from a third-party COBRA administrator known as WageWorks. Importantly, Plaintiff's counsel has resolved many deficient COBRA notice cases based on WageWorks COBRA forms that were nearly identical to the one used by Defendant, including *Valdivieso v. Cushman & Wakefield, Inc.*, M.D. Fla. Case No. 8:17-cv-00118-SDM-JSS; *Carnegie v. FirstFleet Inc.*, M.D. Fla. Case No. 8:18-cv-01070-WFJ-CPT; *Hicks v. Lockheed*, M.D. Fla. Case No. 8:19-cv-00261-JSM-TGW; *Silberstein v. Petsmart, Inc.*, Case No. 8:19-cv-02800-SCB-AAS; and, finally, *Holmes v. WCA Management Co.*, M.D. Fla. Case No. 8:18-cv-01070-WFJ-CPT.

Cabassa from Wenzel Fenton Cabassa, P.A., along with Marc Edelman from Morgan & Morgan.

**B.    Defendant's Defenses.**

Had mediation been unsuccessful, Defendant had available to it a myriad of defenses to Plaintiff's allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages, and a possible standing defense. Specifically, Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class members because the COBRA Notice complied with the notice requirements under ERISA, COBRA, and relevant regulations. Furthermore, Defendant denies that Plaintiff suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing, does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

## II.    **THE PROPOSED SETTLEMENT.**

### A.    **The Proposed Settlement Class.**

The Settlement Agreement defines the proposed Settlement Class as follows: "All participants and beneficiaries in the Defendant's Health Plan who were sent a COBRA Notice by Defendant during the Class Period as a result of a qualifying event, as determined by Defendant, who did not elect COBRA". The Class Period is defined as the period from March 17, 2017, to the date of the Court's preliminary approval order. According to the records of Defendant's third-party COBRA administrator, the class is comprised of approximately 906 people.

### B.    **Benefits to the Settlement Class.**

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all Settlement Class Members in exchange for the Defendant's agreement to pay $65,000 to a settlement fund ("Settlement Fund"). Each Class Member is entitled to a gross pro-rata portion of the Settlement Fund totaling $71.74. After deducting the estimated cost for settlement administration and a general release payment to the Named Plaintiff, each of the Settlement Class Members are entitled to receive a net

payment of approximately $53.00.[4]    All Class Members will automatically receive a check without having to take any action whatsoever, making this a "claims paid" settlement. Importantly, no funds will revert to Defendant. Any remaining funds will be paid to *cy pres* recipient Bay Area Legal Services, subject to Court approval.

Additionally, Defendant has agreed to pay Plaintiffs' attorneys fees and costs in a separate amount of up to $70,000. Plaintiffs' counsel will file a separate fee petition with the Court addressing fees and costs. The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund and the class definitions were agreed upon. Neither settlement approval nor the size of the Settlement Fund is contingent upon the full amount of any requested fees being approved.

The Named Plaintiff will request Court approval of $5,000 as a general release payment, which is separate from the release of her claim as a Settlement Class Member.

### C.    <u>Administration of Notice</u>.

The Parties hired a private third-party vendor American Legal Claim Services, LLC, ("ALCS") to administer notice in this case (the "Settlement

---

[4] $65,000 / 906 total Settlement Class Members = $71.74 gross pro rata recovery per Class Member; $65,000 - $12,000 for cost of administration - $5,000 general release payment = $48,000 / 906 = $52.98 net pro rata recovery per Class Member.

Administrator"). The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Fund.

The Short Form and Long Form Notices informed Settlement Class Members of: (1) the material terms of the Settlement Agreement; (2) their right to object or opt-out and how to do so; (3) that they will be bound by the Settlement Agreement if they do not opt-out; (4) the date, time, and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after the required CAFA notices have been mailed); and (5) that the Court retains the right to reschedule the final fairness hearing without further notice. They are, again, substantively identical to those approved by this Court in *Vazquez*[5] and also in *Rigney*.[6]

If the Court grants final approval of the settlement, Defendant will transfer the full amount of $65,000 to the Settlement Fund within fifteen (15) days of the Effective Date of the Settlement. Settlement checks will be mailed to all Settlement Class Members within ten (10) days after receipt by the Settlement Administrator of the Settlement Fund monies. To the extent any money remains in the fund after these distributions and after Settlement Class

---

[5] *Rigney, et al. v. Target Corp.*, Case No. 8:19-cv-01432-MSS-JSS; *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP.

Members have had 60 days to cash their settlement checks, such monies shall be paid as a *cy pres* donation to Bay Area Legal, subject to Court approval.

      **D.**    **Class Action Fairness Act Notice.**

The Settlement Administrator caused notice of the proposed settlement to be served upon the appropriate federal and state officials, as required by the Class Action Fairness Act of 2005 ("CAFA"), in substantially the form of the CAFA notices attached as Exhibit E to the Settlement Agreement.

      **E.**    **The Court's Order granting Preliminary Approval of the Settlement.**

On November 2, 2021, this Court issued an order preliminarily approving the Class Action Settlement Agreement between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 24.) In that Order, the Court found that the settlement terms are "fair, reasonable, and adequate." (*Id.*, p. 2, ¶ 2). Following entry of that Order, and as further explained by the attached sworn declaration from the Settlement Administrator, Notice was mailed out to the Settlement Class Members.

**G.**    **The Class Member's Reactions to the Settlement.**

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"), sent the short form Class Notice approved by the Court to each of the Settlement Class Members on November 4, 2021, via first-class mail. (*See*

Declaration of Keith Salhab from American Legal Claims Services, LLC, ¶ 3)
(hereinafter "Salhab Dec.").

The Class Notice provided Settlement Class Members with all required
information relating to the Settlement including: (1) a summary of the lawsuit
and an overview of the nature of the claims; (2) the definition of the Settlement
Class certified by the Court; (3) a clear description of the material terms of the
Settlement; (4) an explanation of the claims being released; (5) an explanation
of Settlement Class Members' rights; (6) instructions as to how to object to the
Settlement and a date by which Settlement Class Members must object; (7) the
date, time, and location of the final approval hearing; (8) the internet address
for the settlement website and the toll-free number from which Settlement
Class Members could obtain additional information about the Settlement; and,
(9) identification of Class Counsel and information regarding the compensation
that they would seek pursuant to the Settlement Agreement.

The Settlement website provided Settlement Class Members with access
to the following documents: (i) the Long Form of Class Notice which explained
the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class
Settlement Agreement and Release, with exhibits; (vi) Motion for Preliminary
Approval of Class Action Settlement, with exhibits; and (vii) Preliminary
Approval Order.  The Long Form of Notice included a set of Frequently Asked
Questions ("FAQs") and answers about the Settlement.

ALCS also set up a toll-free telephone support line that Settlement Class Members could call to obtain additional information. Thus, notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval. The Settlement Class Members overwhelmingly accepted the Settlement. None objected and not a single class member asked to be excluded. (*See* Salhab Dec., ¶¶ 9-11). Not only that, but it is also estimated that 100% of Settlement Class Members received the Class Notice. (*See* Salhab Dec., ¶ 9). Given these facts, the Class Members' reactions were overwhelmingly positive.

## II.    THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED.

### A.    The Class Has Already Been Certified on a Preliminary Basis.

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (*See* Doc. 35). Since the Court's Preliminary Approval Order, no objections addressing class certification were received. Thus, there is no reason to re-visit the Court's prior ruling. Pursuant to Fed.R.Civ.P. 23(e), the Court should grant final approval of the settlement.

### B.    Notice to the Class under Fed.R.Civ.P. 23(e)(1).

Under Fed.R.Civ.P. 23(e)(1), Courts typically first analyze the notice to the class. As to the manner of providing notice, Federal Rule of Civil Procedure

23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)).

Here, the Settlement Administrator exceeded these requirements by send out the Court-approved short form version of the notice to all class members via U.S. Mail. That notice included all information required by Fed.R.Civ.P. 23(e)(1) and 23(c)(2)(B), including a link to the long-form version of the notice as well as the 1-800 informational number, along with all of the other required information. Thus, notice was sufficient.

**C.    Final Approval is Appropriate Under Fed.R.Civ.P. 23(e)(2).**

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here, and the Court should enter a Final Order approving the Class Action Settlement Agreement.

**1.    The Class Representative and Class Counsel Have Adequately Represented the Class.**

There is no question that the Named Plaintiff, Alex McNamara, and the undersigned have adequately represented the class.  This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.  *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Alex McNamara is adequate given that her interests are equivalent to those of the Settlement Class.  She was actively involved in this case from its inception, including providing the original documents supporting the allegations from the Complaint, providing input and approval to the filing of the Complaint, participating in settlement discussions, and also attending the Zoom mediation. Furthermore, there is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. She, along with her counsel, secured a six-figure settlement from a highly sophisticated Defendant in favor of the class members he represents.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the previously filed declarations by class counsel, *see* Docs. 22-5 (Hill Decl.), 22-6 (Cabassa Decl.), and 22-7 (Edelman Decl.), and the attached declaration.  In fact, the undersigned are the only attorneys (of which the undersigned is aware) to be appointed as class counsel in a COBRA notice case in the Middle District of Florida, including in *Vazquez v. Marriott International, Inc.,* M.D. Fla. Case No.: 8:17-cv-00116-MSS-SPF (appointed as class counsel in COBRA class action case involving over 19,000 class members).  Additionally, the undersigned have been appointed as class counsel in several other COBRA class action cases, including most recently in *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34).  *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same).

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference.  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521,

532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

> **2.    <u>The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel Before A Neutral Mediator</u>.**

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. Not only that, the Parties used a highly respected mediator in this case, Carlos J. Burruezo, one of the most respected mediators in Florida. *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was warranted because it was overseen by "an experienced and well-respected mediator"). The Parties and counsel were well-informed of the potential

strengths and weaknesses of their positions and conducted good-faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3.    The Settlement Provides Adequate Relief to the Class Members.

The relief to Settlement Class Members satisfies the third Rule 23(e)(2) factor. Members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $71.74 and a net payment of approximately $53.00.[7] These amounts are consistent with COBRA class action

---

[7] $65,000 / 906 total Settlement Class Members = $71.74 gross pro rata recovery per Class Member; $65,000 - $12,000 for cost of administration - $5,000 general release payment = $48,000 / 906 = $52.98 net pro rata recovery per Class Member.

settlements approved by other federal courts, including here in the Middle District of Florida.  This recovery falls well within the range of reasonableness for settlement purposes. *See e.g., Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 per class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits.  Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the

likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator

acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice).    Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive.  The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant.  Plaintiff still had to establish that class certification was warranted, and further demonstrate the merits of his claim, both individually and on behalf of any class.   Each of these remaining phases of the litigation presents serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid.  *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are

20

uncertain.  *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases.  Under the Parties' Settlement Agreement, the Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than what could have been recovered through successful litigation.  Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties.  The Named Plaintiff also supports the Settlement as do the Class Members— evidenced by the lack of objections and exclusions.

**4.    The Proposal Treats Class Members Equitably Relative to Each Other.**

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably.  In fact, they are treated identically.  As set forth above, members of the class will receive a *pro rata* gross amount of the settlement fund totaling approximately $71.74 and a net payment of approximately $52.98.  These amounts are consistent with COBRA class action

settlements approved by other federal courts, including here in the Middle District of Florida.[8]

Moreover, this a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiff had chosen to continue to litigate his claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left

---

[8] *Vazquez v. Marriott International, Inc.*, M.D. Fla. Case No. 8:17-cv-00116-MSS-MAP (Feb. 27, 2020, Doc. 127) (Judge Scriven approved gross recovery of $13.00 per class member in 20,000 member class); *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13).

completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiff overcame an inevitable defense summary judgment motion, successfully had the case certified as a class under Rule 23 by the Court, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5.    The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement

Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.,* 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

**D.** **The Remaining Factors Under Fed.R.Civ.P. 23(e)(3)-(5) are Satisfied.**

In accordance with Fed.R.Civ.P. 23(e)(3), the parties have filed at Doc. 22-2, the settlement agreement for which they seek final approval. Similarly, Fed.R.Civ.P. 23(e)(4) is satisfied by the notice period during which class members were given sufficient time to be excluded and/or object. And, finally, Fed.R.Civ.P. 23(e)(5), which sets out the applicable procedures for evaluating objections, is also satisfied because, in fact, to date there have been no objections made. Thus, each of these factors also weigh in favor of the Court granting final approval of the Parties' class action settlement.

## III.  CONCLUSION.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion. A proposed Order is attached as Exhibit A.

## IV.    <u>CERTIFICATE OF GOOD FAITH</u>.

In good faith, Plaintiff's counsel certifies that in conformance with Local Rule 3.01(g), he conferred with Defendant's counsel about the issues raised in Plaintiff's Motion. Defendant does <u>not</u> oppose the relief requested herein.

DATED this 14th day of January, 2022.

Respectfully submitted,

*/s/Brandon J. Hill*
**BRANDON J. HILL**
Florida Bar Number: 37061
Direct No.: 813-337-7992
**LUIS A. CABASSA**
Florida Bar Number: 053643
Direct No.: 813-379-2565
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Ave., Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Facsimile: 813-229-8712
Email: lcabassa@wfclaw.com
Email: bhill@wfclaw.com
Email: gnicholss@wfclaw.com
***Attorneys for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of January, 2022, the foregoing was electronically filed with the Clerk of the Court via the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/Brandon J. Hill
**BRANDON J. HILL**